UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL COPPERNOLL, JR.,

   Plaintiff,         FILE NO. 5:06-CV-120

v.                HON. ROBERT HOLMES BELL

CUSTOM HOUSING CENTER, INC., et al.,

    Defendants.
_____/

## OPINION

  Plaintiff Daniel Coppernoll, Jr., filed the instant action raising a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and numerous state-law claims. The matter presently is before the Court on a motion for partial summary judgment on the federal claim and to dismiss the remaining state-law claims brought by Defendants Custom Housing Center, Inc. ("Custom"), Indiana Building Systems, LLC ("iBS"), and Gloria Whitelock (Docket #16).  For the reasons that follow, the motion is **granted**.

### I.

  The allegations of the complaint arise out of Plaintiff's purchase from Defendants Custom and Whitelock of a modular home manufactured by Defendant iBS. The modular home was installed on a building site in Hanover, Michigan, by Custom.  Whitelock is the President of Custom.

The complaint alleges that the home actually installed differed from that ordered by Plaintiff in that its layout was reversed from that ordered, and the color, price, quality and interior design were different.  Plaintiff also alleges that the home had substantial interior and exterior damage on installation, including problems with the ceiling, carpeting, doors, electrical wiring, floors, hot water heater, foundation, furnace, gutters, plumbing, roof, siding and ventilation.   In addition, Plaintiff contends that Defendants Whitelock and Custom charged him $30,000 above the purchase price for installation and repairs, though they did not have written contracts for the overages.

Plaintiff raises eleven counts in his complaint: (1) breach of contract; (2) breach of express and implied warranties under MICH. COMP. LAWS § 440.2314; (3) revocation of acceptance; (4) violation of the Uniform Mobile Homes Warranty Act, MICH. COMP. LAWS § 125.991 *et seq.*; (5) violation of the MMWA, 15 U.S.C. § 2301 *et seq.*; (6) violation of the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 *et seq.*; (7) violation of Michigan's Occupational Code: Residential Builders and Contractors, MICH. COMP. LAWS § 339.2401 *et seq.*; (8) misrepresentation; (9) innocent misrepresentation; (10) exemplary damages; and (11) specific performance of the purchase agreement.

Defendants have moved for summary judgment on Plaintiff's federal claim under the MMWA.  Defendants also seek dismissal of the supplemental state-law claims under 28 U.S.C. § 1367.

## II.

On a motion for summary judgment, a court must consider all pleadings, depositions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court, however, "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Id.* Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).

In order to prove that a triable issue exists, the nonmoving party must do more than rely upon allegations, but must come forward with specific facts in support of his or her claim. *Celotex*, 477 U.S. at 322; *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002). A party opposing a motion for summary judgment "may not merely recite the incantation, 'Credibility,' and have a trial in the hope that a jury may disbelieve factually uncontested

proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Curl Int'l Bus. Machs. Corp.*, 517 F.2d 212, 214 (5th Cir. 1975)). After reviewing the whole record, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "'[D]iscredited testimony is not [normally] considered a sufficient basis'" for defeating the motion. *Anderson*, 477 U.S. at 256-57 (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984)). In addition, where the factual context makes a party's claim implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323-24; *Matsushita*, 475 U.S. at 586-87; *Street*, 886 F.2d at 1480. "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).

## III.

A.   MMWA

The MMWA provides for the issuance of rules governing the contents of warranties of consumer products. 15 U.S.C. § 2302. The term "consumer product" is defined under the MMWA as follows:

4

> [A]ny tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed).

15 U.S.C. § 2301(1). Under the provisions of the MMWA, the Federal Trade Commission ("FTC") is required to prescribe rules mandating that the terms of any written warranty be made available to the consumer prior to any sale and prohibiting a warrantor from conditioning the warranty on the use of a particular product. 15 U.S.C. §§ 2302(b)(1)(A), 2302(c). The FTC also is authorized to establish rules for determining the manner and form in which such warranty is presented or displayed and for extending the warranty period in certain circumstances. 15 U.S.C. §§ 2302(b)(1)(B), 2302(b)(3), 2302(c).

Defendants argue that a modular home is not a consumer product within the meaning of the MMWA. The issue of whether a modular or prefabricated home is a consumer product has been addressed by very few courts. In *Clark v. Jim Walter Homes, Inc.*, 719 F. Supp. 1037 (M.D. Ala. 1989), the district court concluded that modular or prefabricated stationary houses do not constitute personal property amounting to a consumer good. *Id.* at 1043. The court recognized that, in drafting the MMWA, Congress used terms with well established meanings in traditional property law, such as "personal property" and "real property." *Id.* The term "consumer products" under the statute includes only personal property. *Id.*

Under standard property law, in contrast, "[d]wellings in general, like the land to which they are attached, fall into the category of real property as that term is commonly used in property law." *Id.* (citing 73 C.J.S. *Property* § 14 at 183-84 (1983); BLACK'S LAW

DICTIONARY 1096 (5th ed. 1979) (defining real property as "Land and generally whatever is erected . . . upon or affixed to land")).  By using those terms without providing an alternate definition, the *Clark* court reasoned that Congress intended the terms to have their common meanings.  As a result, the court found that the plain language of the statute supported the conclusion that sales of dwellings were not covered by the MMWA.  *Id.*

The *Clark* court also concluded that the reading was consistent with legislative history expressly including certain consumer products that could become attached to real property, which would be considered fixtures under traditional property law.  *Id.* (citing H. REP. NO. 1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. CODE CONG. & ADMIN. NEWS 7702, 7717).  The court reasoned that the specific identification as consumer products of certain items that could otherwise become fixtures suggested that Congress did not intend to include the dwelling to which they are attached as a consumer product.  *Id.*  Further, the FTC has adopted regulations that reinforce this conclusion:

> In the case where a consumer contracts with a builder to construct a home, . . . the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials.

16 C.F.R. § 700.1(f).

In reaching its decision that modular homes are not governed by the MMWA, the *Clark* court relied upon *Kravitz v. Homeowners Warranty Corp.*, 542 F. Supp. 317, 321-22 (D. Pa. 1982).  In *Kravitz*, the court analyzed the probable inapplicability of the MMWA to modular housing, though the court ultimately did not need to decide the issue.

6

Since *Clark*, no court has reached a contrary decision.[1]  However, several courts have discussed the *Clark* decision with approval, distinguishing mobile or manufactured homes from modular homes.  *In re Van Blarcum*, 19 S.W.3d 484, 491-92 (Tex. Ct. App. 2000); *Yeomans v. Homes of Legend, Inc.*, No. 00-D-824-N, 2001 WL 237313, at *5 (M.D. Ala. Mar. 5, 2001).  As those courts have recognized, "[u]nlike a prefabricated home that is stationary once attached to land, a mobile home by its very nature is a movable dwelling." *Van Blarcum*, 19 S.W.2d at 492.

The FTC also has addressed the issue in an advisory opinion.  *See FTC Advisory Opinion*, 90 F.T.C. 980, 981 (1977).  The FTC determined that

> A modular house which meets one of the sets of uniform home construction codes set forth in the appendix to this letter or a construction standard established by a state for modular homes, as distinct from mobile homes as they are defined by the state, is real property and should, therefore, be excluded from the Section 101(1) definition of 'consumer product.'  The sets of uniform codes are widely used in the construction of conventional, 'stick-built' homes, which are real property.  These codes are usually the basis for any distinct state modular housing codes.  Thus, a factory built house which satisfies one of these sets of codes or a separate state modular code is essentially of the nature of real property and should, therefore, be excluded from coverage of the Act.  On the other hand, a factory built dwelling that fails to satisfy one of the specified sets of codes or a separate state modular code must comply with the requirements of the Act.

---

[1] Plaintiff cites *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910 (N.D. Ohio 2003), to support his contention that modular homes fall within the meaning of the MMWA. In *Rickard*, the court found that the MMWA precluded enforcement of binding arbitration on a buyer's claims against the seller of a modular home.  In *Rickard*, however, the parties did not contest whether the MMWA applied to modular homes.  The issue therefore was not before the *Rickard* court and was not decided by that court.  As a result, the decision does not provide authority for Plaintiff's position.

*Id.* Defendants have provided the affidavit of John P. Guequierre, Chief Executive Officer

of iBS. According to Guequierre,

> The Plaintiff's modular home is, in essence, a prefabricated home that was
> manufactured by IBS in accordance with the residential building codes of the
> State of Michigan, namely the 2003 Michigan Residential Code and the 2003
> Michigan Plumbing Code. These are the same building codes applicable to
> site-built homes in the State of Michigan.

(Guequierre Aff. ¶ 4, docket #18.) Defendants argue that, because the modular home was

manufactured in accordance with the relevant Michigan building codes, under the FTC

Advisory Opinion, the home does not fall under the MMWA.

Plaintiff first asserts that the opinion letter is not binding and therefore should not be

relied upon by this Court. In the alternative, he argues that the advisory opinion actually

supports his position, since the home allegedly fails to meet building codes.

An agency advisory opinion is not binding, but "it is worthy of 'some deference.'"

*Bank of New York v. Janowick*, 470 F.3d 264, 269 (6th Cir. 2006) (quoting *Christensen v.*

*Harris County*, 529 U.S. 576, 587 (2000)); *see also Caremark, Inc. v. Goetz*, 480 F.3d 779,

787 (6th Cir. 2007). "Interpretive guidance from administrative agencies that is not the

product of formal, notice-and-comment rulemaking is entitled to respect 'to the extent that

the interpretations have the power to persuade.'" *Id.* (quoting *Christensen*, 529 U.S. at 587

(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944))).

The Court finds the Advisory Opinion to be persuasive only insofar as it is correctly

interpreted. The language of the Advisory Opinion suggesting that coverage under the

MMWA turns on whether the modular home meets building codes can be interpreted in two

8

ways.  First, the language may be interpreted as an inquiry into whether modular homes are built and governed by state residential building codes or the building codes identified in the appendix to the letter.[2]  Second, the language may be read to extend coverage under the MMWA to any modular home if the Plaintiff can make an arguable claim that some defect qualifies as a building code violation.

Only the first of these interpretations is reasonable.  The determination as to whether the modular home is a consumer product under the MMWA cannot turn on whether the specific home ultimately is found to have a defect in manufacture.  The question instead must involve whether residential building codes govern the construction and approval of modular homes.  Modular homes are distinct from manufactured or mobile homes.  Manufactured homes are built in accordance with the federal Manufactured Housing and Construction Safety Standards Act and the implementing regulations adopted by the United States Department of Housing and Urban Development.  (Guequierre Aff. ¶ 6, docket #18.)  *See also* 42 U.S.C. § 5401 *et seq.*  In Michigan, they are separately governed by the Uniform Mobile Homes Warranty Act, MICH. COMP. LAWS § 125.991 *et seq.*  Modular homes, in contrast, ordinarily are subject to state building codes.  The Advisory Opinion language reasonably construes the question of whether modular homes are covered by the MMWA as

---

[2]Among the codes identified in the appendix to the Advisory Opinion was the BOCA Basic Building Code, which Michigan used at the time the Advisory Opinion was issued in 1977.  Since that time, that code and the others listed in the appendix have been combined into one code, the international residential code.  Michigan's Residential Building Code is now based on the international residential code.  *See* MICH. COMP. LAWS § 125.1504(2).

dependent on whether they are regulated by residential building codes.  If governed by state building codes, modular homes, like stick-built homes, are properly considered real property.

Here, Plaintiff fails to demonstrate a genuine issue of material fact as to whether modular homes are subject to state building codes.  The affidavit of John Guequierre unequivocally states that Plaintiff's modular home was built in accordance with state residential codes.  While Plaintiff alleges in his affidavit that he has personal knowledge that the home, as installed, did not meet state building codes, his averment is irrelevant.  Even assuming that Plaintiff has the relevant expertise to make that determination, he does not assert that the home is not governed by the building codes.  The affidavit and incorporated report of Plaintiff's proposed expert, Ronald Tyson, is equally unavailing.  At no time does Tyson indicate that the home was not subject to Michigan building codes.  Indeed, to the extent Tyson's report addresses specific deficiencies in construction as opposed to expected performance under the contract, the report discusses those deficiencies in relation to the residential building codes.[3]

For all these reasons, the Court concludes that the modular home is not a consumer product within the meaning of the MMWA.

_____

[3]Defendants have filed motions to strike both the original and supplemental affidavits (Docket ## 24, 29) submitted by Plaintiff and Ronald Tyson.  The Court has considered the affidavits for what they are worth, giving the appropriate weight to averments that are based on personal knowledge and expertise and ignoring those averments that are based on hearsay or lack the requisite foundation.  Because the affidavits are of little relevance and because the Court is fully able to determine the foundation and hearsay content of every allegation independently, the Court will deny the motions to strike (Docket ##24, 29).

B.     State-Law Claims

The majority of Plaintiff's claims are grounded in state law.  Having determined that summary judgment is appropriate on the only federal claim, this Court declines to exercise supplemental jurisdiction over the remaining claims.  Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.  *See Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998).  Dismissal is particularly appropriate in the instant case, inasmuch as Plaintiff concedes that he contractually agreed to litigate any claims in Ionia County Circuit Court.  Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## IV.

For the foregoing reasons, the Court will grant Defendants' motion for partial summary judgment and to dismiss.  A judgment consistent with this opinion shall be entered.

Date:    May 18, 2007            /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 CHIEF UNITED STATES DISTRICT JUDGE